Okay, well we thank you for your concern. Thank you very much. Our next case is In Re Karpf. You know what, you should volunteer to play poker with me any time you want, because I don't have the time for tricks, that's for sure. Mr. Mataloup, is that correct? Okay, I'm sorry. Yes, Mr. Trask. Thank you, Judge Reina. And good morning. May it please the Court. Andrew Trask on behalf of Appellant Ronald Karpf. With respect to the Board's Section 102 Anticipation Rejection, I'd like to focus on two critical claim limitations that are missing from the sole prior art reference. The first of those is electronic output or access of the treatment information by the patient. And the second is monitoring compliance based upon access of the treatment information. Now with respect to the first, that limitation of electronic output or access is present in all of the claims at issue. And it's not disclosed by the sole reference. The Board focused on the home access passage of the sole reference, and that's at A558, the bottom of column 27. That passage does not disclose electronic access. It's focused on the initial assessment portion of the sole reference. And the initial assessment is what happens when the patient first approaches the sole system to report a complaint or some type of a medical problem. This happens before the patient is seen by the doctor and before treatment information is ever entered. So that limitation is not disclosed by the prior art reference. Let me join a housekeeping kind of question. Maybe we can clear up some of this. As to claims 29 to 34, the Board says you didn't separately contest the anticipation finding. And you provide a limited statement. You say for the same reasons as for claim 28, the Board's anticipation rejections of those dependent claims lack substantial evidence or require reversal. That's it. That's your entire argument. Is that enough to preserve those claims on appeal? So claims 29 through 34, Judge Wallach, depend from independent claim 28. So claim 28 requires both access of the treatment information by the patient and monitoring the compliance based upon the access. So for that reason, because both of those limitations are missing from claim 28, claim 28 is not anticipated. And the claims that depend from claim 28 are also not anticipated because they include all of the limitations of independent claim 28. That's your answer? Are you telling me you preserved those for appeal? Those are preserved, Judge Wallach, absolutely. Those claims contain the same limitations as claim 28. And it's clearly stated in Dr. Karp's brief that there's no substantial evidence for the Board's anticipation decision for all of the claims that have been rejected under section 102. So the claims that you pointed to are not argued separately, but they all contain the limitations in independent claim 28. And therefore, the Board's decision lacks substantial evidence for the same reasons as claim 28. So those claims were preserved, Your Honor. The second issue for anticipation is, as I mentioned earlier, monitoring compliance based upon access of the treatment information. And this limitation is also missing from the sole reference. The Patent Office only points to a couple of isolated references to compliance, but those are not compliance based upon access of the treatment information. And those are asking the patient whether she intends to comply before she even leaves the doctor's office, or upon some time in the future when the patient returns to the doctor's office, asking whether she did comply. But neither of those is monitoring compliance based upon the access of the treatment information. And I'll point as well, Your Honor, to the fact that the Patent Office appears to recognize the problems in the Board's reliance on the home access portion of SOLE. Because in its appeal brief here, it shifts the focus. It moves away from the home access portion, and it moves towards the exit interview portion. Now, that's problematic for several reasons, one of which is that the Board expressly declined to rely on the exit interview portion, including Figures 3 and 12. On the what? So, the Board, in its rehearing decision, said it declined to rely on the exit interview portion of SOLE in affirming the examiner's rejection under Section 102, the anticipation rejection. And the reason that's important, Your Honor, is that had the Board recognized and declining to rely on that passage of the prior art reference, that that passage was not relied upon by the examiner. So, if the Board had relied on that passage, it would have had to designate that decision a new ground of rejection. And under the Patent Office's own regulations, when the Board designates a new ground of rejection, it affords the applicant procedural safeguards. Namely, the applicant can reopen prosecution, or the applicant can request rehearing. Now, the Board made the conscious decision not to rely on that passage and did not afford Dr. Karff those procedural safeguards. And in and of itself, there's no problem with that. The Board does not have to designate new grounds of rejection. Did the Board make a conscious decision not to rely on ALICE? The government says you have a 101 problem. So, right, the government raises the ALICE issue in the final paragraph of its brief. That's correct. And the Board didn't pass upon that below. Now, I think it's fair to say that the Board concluded that these claims are not abstract because the Board was focused on Section 101. And there is a 101 issue in this case, but it's not an ALICE abstract issue. It's a different 101 issue. But the Board did find Claim 28 ineligible under 101. That's right, Judge Hughes. So, we can review that ineligibility determination and apply the law of ALICE if we want. The Court could do that if it wanted to, but there are several reasons that the Court should not. Well, let me ask you this because I think 28 is clearly ineligible under ALICE. If that's the case, aren't all the dependent claims you're talking about also ineligible under ALICE? I don't see anything in 29 through 34, 36, or 37 that add anything beyond just more steps to be done on a computer. So, the Board rejected Claim 28 under 101. I understand. The Board didn't make a proper 101 rejection on 29 through 34, 36, and 37. So, that's probably not before us. Although, it seems to me that if we send this back, that's exactly what they're going to do. I disagree on that point, Your Honor. There are actually – there's another pending application before the Board involving the same specification. Those pending claims, though, they've been rejected on other bases. They've never been rejected under ALICE. By the examiner. By the examiner, correct. It hasn't gotten to the Board yet. Well, that case was, in fact, it was before the Board. This was the appeal that was decided by this Court last year. The Board never rejected those claims as abstract either. So, the examiner and the Board has had opportunities, including the very claims at issue here, to raise the issue of abstractness, and it's never done that. Now, the reason that this Court should not reach out to the ALICE issue for the first time here on appeal is that, number one, there's been no analysis of the issue below. I'm not suggesting we should. I mean, I'm not going to do that, but it seems to me that if it goes back, that the Board is going to take a very clear look at this, and it's very likely to reject all of these as ineligible based on ALICE. Whether that's true or not, I can't be sure. The Board, in fact – the Patent Office just last week issued new guidelines under 101. I think it's fair to let the Patent Office look at this in the first instance. The claims are not abstract under ALICE, and I can get into those issues, but let me start first with the 101 issue that was, in fact, raised by the Board. Now, the very section of the MPEP that's cited by the Patent Office says that the 101 analysis is a two-step process. First, you need to consider whether Claim 28 is directed to one of the four categories under Section 101, that is process, machine, manufacturer, or composition of matter. And then you turn to the second step, and you determine whether any of the judicial exceptions apply. Here, all of the analysis was focused on that first step. Is Claim 28 directed to one of those four categories? But you're talking about Claim 28 now. We certainly can look at whether the law has changed on how we approach abstract ideas, can't we? We're not bound by the MPEP or whatever it is on how we look at the 101 determination here. We can apply ALICE to Claim 21 ourselves and say, is it an abstract idea, which is the first step, and does it add anything more to essentially take it out of that realm? So, the Court can certainly apply ALICE. 101 is an issue of law. The Court could do that if it chose to. I think it makes sense for the Court to let the Patent Office... Where in Claim 28 does it recite anything that's not abstract steps of treating... I mean, the word abstract doesn't fit very well, but this is the way the Supreme Court and we have looked at it, taking conventional steps and saying, do it on a computer, is generally not good at. I mean, 28 says entering treatment information, determining access information by a patient, monitoring compliance. Those are all things that could be done by pencil and paper. So, let me be clear about this. I disagree that these are things that can be done on a pencil and paper. The invention here is different from some of these other ALICE cases, like the bankruptcy case, that were simply taking what could have been done in the past on a piece of paper and doing it faster or more efficiently. This is a novel approach and is an inventive concept because... Didn't you waive these arguments for Claim 28? No, Your Honor. The issue of 101 was raised by Dr. Karff. It was a new ground of rejection instituted by the Board, and it was raised by Dr. Karff in his rehearing brief. He pointed out on A482 that the Board overlooked the article of manufacturer limitation in Claim 28, and then on A483, he asked the Court to reconsider the new ground of rejection. So, that's absolutely preserved. Of course, he's also proceeding pro se. This is a straightforward legal issue. There's no reason this Court shouldn't address the 101 issue here. I'm into my rebuttal time here, but I just wanted to address one further point, which is that on the anticipation issue, this Court should not pass upon the exit interview portion because to do so would effectively be an end run around the procedural safeguards afforded to Dr. Karff here. For this Court to affirm on a basis that would have been a new ground of rejection had the Board relied on it would essentially thwart the rights that Dr. Karff and other patent applicants would have at the Board. So, the Court should not consider that, and I'll reserve the rest of my time. You say it was pro se. He had counsel most of the time, didn't he? He had counsel during part of the prosecution, that's right. It's undisputed here that at the time of the alleged waiver, he was pro se, and he notified the Board of that fact. Thank you, Mr. Karff. Mr. Helm? May it please the Court, I guess I'd like to start with what the parties agree on with this, that Sol discloses. Sol discloses a physician entering inpatient treatment and diagnosis information into a database. It's stored in a server. Does it disclose accessing the data at home? I think that the Board certainly found that it did, and I can, before I want to address the substance of the question, but I just want to make a distinction between claims 26 and 27. Does it monitor, does it still monitor the access of the data? Yes, I believe it does, and so what the Board found was that at the bottom of column 27, let me just open up to make sure that I have the right citation here, J558. At the bottom of column 27, it describes that the patient can access from home using the CPM system, using the Internet, the system for triage, screening, or health education sessions. And the Board looked at that disclosure, and they concluded that that meant that, and then goes on to say that if a patient has a problem that's identified, it sends a notification to the doctor, and it sends a notification to the patient. But if it doesn't send a notification, then is there any way of knowing or monitoring that particular access? Well, what the Board found was that the access, it's not the, let me just get the claim language out, because I want to be clear on what claim 28 says. Entering treatment information, determining access of treatment information, so that's the patient logging on to the system, and then monitoring compliance with the patient based on access to the treatment information made by the patient. And so one aspect of the decision was that the- If the patient never logs on from home under SOL, how does it monitor compliance? There's two other ways that it monitors compliance. One way is immediately after the interaction with the doctor, the patient goes to a carol at the doctor's office, uses the patient computer system, and is asked a series of questions about compliance. Those questions include things like whether the patient understands the treatment prescribed, does the patient think the treatment's important, does the patient think the treatment's reasonable. And where's the second point? The second point is at the revisit. And so when the patient comes back to the doctor's office- But what about in between those two? Well, in between the two, what SOL discloses is that the patient can access the system from home as well. Is that access monitored? It has to be monitored because the patient has to log into the system. It's monitored in the sense that the patient has to log into the system. And the monitoring here is- Just to be clear, the monitoring is actually reading claim 28. It seems to be directed towards the doctor because it's monitoring compliance of the patient. And that's what SOL discloses at the bottom here, where it sends a message to the doctor. So if the system identifies a problem with the patient, it notifies the doctor. So that could be a problem with compliance. Is that with the new ailment? Excuse me? It could be a new ailment. And that new ailment could be related to the fact that there's not compliance. And that's what the board said in their opinion. And I think that's entirely reasonable. The other thing I'd like to point out is that one of the arguments that Mr. Karp makes is that this triage screening or health education sessions, that only applies to an initial screening. But SOL is clear. If you look at the triage module, which is figure 5A-I'm going to give you the JA site-523. If you go down, it loads the triage module, loads the patient data, so the patient's access to the system. And if they're not a new patient, it goes immediately to the revisit strategy. And the revisit strategy, there's a whole-that's figure 13-there's a whole list of questions. So what does SOL say that the patient logs in from home? So that's at the bottom of column 27. And, again, they say patients may access CPM. CPM is what the board calls its comprehensive patient management system in the interim from home via the Internet. They also say they could use a CPM CD-ROM or DVD. It goes on to say they can come back to the provider organization, for example, if they don't have Internet access. And then it says symptom updates are stored in the database. And so there's, again, the constant flow of information between the patient and the patient's interaction with the system and the server database. And then if it reveals conditions that need to prompt attention, that's the monitoring part. The patient is instructed to seek care at the end of the CPM session. And then, in addition, the physician is notified. And so that's the monitoring portion. But just to be clear, that monitoring portion is not-monitoring is not part of Claim 26. And I believe I heard Mr. Trask argue that one of the limitations was electronic access. And I don't actually see electronic access as a limitation in these claims. Claim 26 simply requires the server computer responsive. So it's a little bit there. The monitoring is relevant to 28, 29, 23, 24, 26, 27. 28 and depending claims. That's correct. Monitoring is only in those claims. And then giving- 28 was rejected on a new ground, which they didn't challenge, so they're out on 28. So we're really talking about 29, 234, 36, and 37. That is correct with respect to those things. Our position is that 28 was not properly raised. There was no proper-and the Board found there was no substantive argument raised for Claim 28 on the rehearing request. And then there's also Claim 35 was not even mentioned in the rehearing request. And so that actually raises a number of different issues. We argue it as a waiver issue, but the Board rule requires you to do one of two things, which is either reopen prosecution or argue the claim on rehearing. And so it may actually be that that claim is abandoned. I'm not actually positive on this, but it may be that that claim is just abandoned because they didn't choose either of the two options. But we argue it as a waiver issue here. Just to emphasize, just one more time, but Claim 26 is the one that requires outputting the information. Claim 28 is the one that requires monitoring. So that's the difference between the two. If there's no further questions, I'm happy to yield back the rest of my time. No further questions. Thank you very much, Counselor. This Court's case law is clear that the court on factual matters is to review the agency decision on the grounds relied on by the agency. We just heard the Patent Office cite Figure 5, Figure 13. These were never relied upon by the Board. The lawyers here are not the fact finders, and this Court here is not the fact finder. The fact finder is the agency, and these are grounds that were not relied upon in affirming the agency's rejection. Now, with respect to the home access portion, which the Board did rely on, that portion is focused on the initial assessment. The triage, screening, and health education components that are referenced in Column 27 are the initial assessment of a patient's condition before she sees the doctor and before the doctor ever enters any treatment information. Well, there's an exit interview mentioned. There's an exit interview that happens at the patient care, oh, that's right. That does not happen from home. There's no connection between the two, and the Board expressly found... But then there's a reference to coming online through the Internet at home. They're following that. That's right, to do triage, screening, and health education, which is the initial assessment. The only thing that happens from home, from the sole reference, is an initial assessment of conditions prior to the patient being evaluated by the doctor. It's simply impossible that treatment information... Wait, wait, wait, wait, wait. It says completion of the exit interview concludes patient interaction with the system until the next visit, and then it's followed by however patients may access. So, that's following the conclusion, isn't it? So, that's what the reference discloses. And what it's saying is, however, the patient may log on from home to provide symptom updates based on new patient information. This is if the patient has at some point in the past undergone a doctor's visit for one condition, and then from home experiences some new condition, let's say a headache. She can log on to the system, report the fact that she has a headache, and then the system will tell her if she needs to go see the doctor. That is what the home access portion is, and it's nothing more than that. So, the patent office's attempt to graft onto this limited home access portion the notion that you can do an exit interview, the notion that you can do a revisit interview from home is not supported by substantial evidence in the record, and it is a new factual basis that should not be relied upon by the court. The fact that the claims do not require electronic access is incorrect. Claim 26 requires a computer that outputs to a patient over a network the treatment information. The notion that over a network can read on a printed piece of paper makes no sense. The board didn't find that, and it's an unsubstantiated argument here at the appeals court. Claim 28, in addition to requiring monitoring compliance, also requires determining the access of the treatment information by the patient. That's not possible with a printed piece of paper. That requires electronic access so that the computer system can determine when the patient logged on and accessed her treatment information, and the system can then determine whether the patient is complying with the treatment or not. Finally, Your Honor, I'd just like to get back to the Section 101 issue. This claim is directed to an article of manufacture. There can be no question here that it falls within one of the four categories under Section 101. That issue was preserved by Dr. Cohn. What's the article of manufacture? The article of manufacture is the computer device. So you think all these claims that the Supreme Court has rejected and that we've rejected, based upon doing routine things on computers, could be saved if you had said we're claiming the computer? Absolutely not. This is not a special purpose computer, right? This is just any random computer that's programmed to do these steps. The 101 issue is a two-part process. I'm not talking about the Alice two-step test. I'm talking about a two-part process, which is, number one, is the claim directed to one of the four categories? Here, it's directed to a manufacturer. This Court's case law specifically says that an article of manufacture is a tangible article of commodity. That's the In re Noit. I don't see how that case law is any good anymore after Alice when we're talking about computers. The Alice question comes next. You didn't invent the computer here. The computer is not what makes this patent eligible. What makes this patent eligible under the Alice test is the fact that never before, prior to Dr. Karff's invention in 1999, was it possible to monitor patients' access in real time, improve compliance based upon access of the treatment information. What had been done before is the patient was given a printed piece of paper and sent home to comply. What happened after that, the doctor was completely in the dark as to whether the patient complied or not. This is not a fundamental or longstanding abstract idea. This is a new concept, the fact that you can monitor in real time the patient's compliance based upon access to the treatment information. So I disagree that these claims are abstract under Alice. I also argue that Alice is not an issue in this case. What's at issue is whether the claims are directed to one of the four categories under 101, and there's no question that they are. Thank you very much. Thank you very much.